IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RICHARD W. HAYES,

    Plaintiff,

v.                                                        Case No. 2:14-cv-2513-JTM-KGG

I.C. SYSTEM, INC., and
BANFIELD PET HOSPITAL,

    Defendants.

**MEMORANDUM AND ORDER**

Plaintiff Richard W. Hayes sought monetary damages against defendants I.C. System, Inc. and Banfield Pet Hospital for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Kansas Consumer Protection Act ("KCPA"), K.S.A. § 50-623 *et seq.* On October 30, 2014, the parties reached a settlement whereby plaintiff obtained a judgment in the amount of $1,001.00. This matter is before the court on plaintiff's Motion for an Award of Costs and Attorney Fees (Dkt. 12).

**I.    Factual and Procedural Background**

In his complaint, plaintiff alleged that, on July 3, 2014, he noticed an entry for $1,229.00 on his credit report, submitted by defendant I.C. System. Upon further investigation, plaintiff learned that the original creditor to this debt was Banfield Pet Hospital. Plaintiff alleged that he never visited Banfield nor did he incur a debt for $1,229.00 or any other amount. Rather, the alleged debt belonged to plaintiff's father, Richard L. Hayes, and is, in fact, listed as a debt on the elder Hayes' bankruptcy filings. Plaintiff therefore alleged in his complaint that defendants

1

commingled his father's debt with his own and damaged plaintiff's credit score.  On June 19, 2014, plaintiff hired counsel A. Scott Waddell of the Waddell Law Firm, LLC and Bryce B. Bell and Daniel Shaw of Bell Law, LLC.  On July 11, 2014, plaintiff's counsel sent defendant I.C. System a *Nelson v. Miller* letter which included an offer to settle for $7,500.00.  On August 8, 2014, in response to plaintiff's demand, defendant I.C. System denied any liability and rejected plaintiff's settlement demand.

On September 5, 2014, plaintiff filed a Petition for Damages for defendants' alleged violations of the FDCPA and KCPA in the Johnson County, Kansas District Court. Dkt. 1-1.  On October 9, 2014, defendants removed this matter to the United States District Court for the District of Kansas. Dkt. 1.  On October 16, 2014, defendants answered plaintiff's Petition, denying any and all liability and requesting an award of attorney's fees. Dkt. 8.  On this same date, defendants submitted an offer of judgment to plaintiff.  Plaintiff accepted this offer on October 30, 2014.  Plaintiff now seeks an award of attorney's costs and fees in the amount of $9,944.88.

## II.  Legal Standard

The FDCPA allows for attorney's fees for successful litigants.  The Act provides, in relevant part:

> Except as otherwise provided in this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of . . .
>
> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court . . . .

15 U.S.C. § 1692k.

Likewise, the KCPA allows for reasonable attorney's fees following a settlement. The Act specifically provides:

> (e) Except for services performed by the office of the attorney general or the office of a county or district attorney, the court may award to the prevailing party reasonable attorney fees, including those on appeal, limited to the work reasonably performed if:
>
> > (1) The consumer complaining of the act or practice that violates this act has brought or maintained an action the consumer knew to be groundless and the prevailing party is the supplier; or a supplier has committed an act or practice that violates this act and the prevailing party is the consumer; and
> >
> > (2) an action under this section has been terminated by a judgment, or settled.

K.S.A. § 50-634(e)(1)-(2).

### III.  Legal Analysis

Plaintiff requests an award of fees in the amount of $9,944.88, which represents $9,730.00 for 35.53 hours of work and $214.88 for costs and fees associated with the litigation. Dkt. 13. Defendants contest the amount of this award given the limited amount of work done and the early settlement and requests that the court award plaintiff and/or his counsel no more than $2,714.88. Dkt. 16. Specifically, defendants argue that the claimed fees and costs are unreasonable due to: (1) billings prior to when counsel took on plaintiff's case, and (2) overlapping, excessive and duplicative billings. They propose a total award of $2,500 for attorney's fees and agree to the $214.88 in costs and fees associated with the litigation.

**A.   Calculating the Lodestar Amount**

A determination of a reasonable attorney's fees award begins with calculating the "lodestar," that is, "the reasonable number of hours spent on litigation multiplied by a reasonable hourly rate." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1233 (10th

Cir. 2000) (internal citations omitted). The party seeking an award of fees has the burden of proving both the number of hours spent and the reasonableness of those hours. *Id*. Once an applicant has met this burden, the lodestar figure is presumed to be a reasonable fee. *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). The court may adjust the lodestar, if necessary, to account for the factors set forth in the Kansas Rules of Professional Responsibility. *Davis v. Miller*, 269 Kan. 732, 7 P.3d 1223, 1236 (Kan. 2000); *see also Sheldon v. Vermonty*, 237 F. Supp. 2d 1270, 1274 (D. Kan. 2003). These factors include:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) The fee customarily charged in the locality for similar legal services;

(4) The amount involved and the results obtained;

(5) The time limitations imposed by the client or by the circumstances;

(6) The nature and length of the professional relationship with the client;

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) Whether the fee is fixed or contingent.

KANSAS RULES OF PROF'L RESPONSIBILITY, 1.5(a); *see also* Kan. Sup. Ct. R. 226 (2009), *Wittig v. Westar Energy, Inc.*, 44 Kan. App. 2d 182, 235 P.3d 515, 529-30 (Kan. Ct. App. 2010), *Johnson v. Westhoff Sand Co.*, 281 Kan. 930, 135 P.3d 1127, 1135-36 (Kan. 2006).

    **1.**    **Number of Hours Reasonably Expended**

The court must first determine the amount of hours reasonably expended by counsel in plaintiff's case. In order for the moving party to satisfy its burden at this step, it "must submit 'meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are

sought, all hours for which compensation is requested and how those hours were allotted to specific tasks.'" *United Phosphorus,* 205 F.3d at 1233 (quoting *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1249 (10th Cir. 1998)). "[T]he overriding consideration . . . [is] whether the attorney's hours were 'necessary' under the circumstances." *Robinson*, 160 F.3d at 1281. This requires the court to determine "what hours a reasonable attorney would have incurred and billed in the marketplace under similar circumstances." *Id*. "The prevailing party must make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id*. at 1280. The court "is justified in reducing the reasonable number of hours if the attorney's time records are 'sloppy and imprecise' and fail to document adequately how he or she utilized large blocks of time." *Id*. (citing *Jane L. v. Bangerter*, 61 F.3d 1505, 1517 (10th Cir. 1995)).

Here, plaintiff retained the services of three attorneys: Waddell, Bell, and Shaw. Together, these attorneys claim to have spent 35.53 hours on plaintiff's case, including time spent on the present motion. Dkts. 13-4, 13-5. Defendants contest this calculation, alleging that counsels' proffered hours contain time spent on excessive, duplicative, non-billable, and inadequately documented tasks. Dkt. 16.

There is no doubt that counsels' time sheets are thorough. They total thirteen pages for a case that settled in two months absent any motion practice or significant discovery. But that, in and of itself, gives this court pause. Neither party has alleged that this case involved particularly complex or unusual matters. Nor does counsel allege that their acceptance of this case was to the detriment of their other cases or precluded them from taking other cases. In fact, attorneys Waddell and Bell, by their own admission, are extremely well-versed in this area of the law, Waddell having "been involved in hundreds of consumer protection cases over the previous five

years alone," (Dkt. 13-7, at 2) and Bell having been former general counsel to the Citywide Companies which, during his tenure "engaged in tens of thousands of consumer transactions." Dkt. 13-8, at 1-2.

As defendants note, this case involved no motion practice, discovery, or mediation. Furthermore, this case was active for less than two months, having been filed on September 5, 2014, and settling on October 30, 2014.  Moreover, plaintiff's pleadings comprise mostly boilerplate language.

The court questions whether counsel's reported 35.53 hours were reasonable.  Indeed, upon careful review, the court finds that counsels' time sheets contain multiple entries for non-billable hours as well as duplicative and excessive hours.

### a. Time spent prior to the litigation-triggering event

Defendants first allege some confusion as to why counsel began charging for their services approximately two weeks before the "litigation-triggering event," which defendants deem to have occurred on July 3, 2014, when plaintiff obtained a copy of his credit report. Dkt. 16, at 5.  While plaintiff acknowledges that he obtained his credit report on this date, he also alleges that the entire reason he met with counsel in the first place was to discuss potential credit report inaccuracies discovered on reports he obtained on June 12, 2013.  Dkt. 19, at 2-3.  The credit report plaintiff obtained on July 3, 2014, was merely an updated version from all three credit-reporting bureaus.  Dkt. 19, at 3.

Based on this explanation, the court determines that counsel was entitled to bill for hours worked before July 3, 2014.

6

### b.   Clerical Work

Defendant next argues that counsel's time sheets contain entries for "non-billable administrative work," such a filing documents on the electronic system.  Dkt. 16, at 7.  There is no doubt that *paralegal* fees are compensable.  However, "[p]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."  *Univ. of Kan. v. Sinks*, 2009 U.S. Dist. LEXIS 89783, at *26 (D. Kan. Sept. 28, 2009) (quoting *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989)).  It therefore stands to reason, then, that "purely clerical or secretarial tasks" should also not be billed at an attorney rate, either, regardless of who performs them.  The court therefore determines that "[t]asks that amount to filing, organizing files, making copies, printing, ordering file folders, organizing boxes, updating files with correspondence and pleadings, and preparing files for storage" must be deducted as purely clerical work that is not compensable.  *Id*. at *26-27; *see also Bell v. Turner Rec. Comm'n*, 2010 U.S. Dist. LEXIS 1547, at *15 (D. Kan. Jan. 8, 2010) (deducting time attorney spent on "purely clerical or secretarial tasks," such as "ordering and paying for copies; communication with court reporters; obtaining and preparing summonses; and communication with process servers.").

After a thorough review of counsel's time sheets, the court identifies 1.35 hours of Bell's documented hours and .10 hours from Waddell's hours as "purely clerical or secretarial tasks." These hours are non-compensable and will therefore be deducted from the total.

### c.   Duplicative Hours

Defendant next alleges that counsels' time sheets contain multiple instances of duplicative entries.  It is well-established Tenth Circuit law that "[c]ourts . . . must be vigilant when a party is represented by more than one attorney to ensure that no billed attorney's fees are

7

duplicative." *Crux Subsurface, Inc. v. Black & Veatch Corp.*, 2011 U.S. Dist. LEXIS 143225, at *9 (D. Kan. Dec. 13, 2011) (citing *Robinson*, 160 F.3d at 1285 n.10) ("The term 'duplicative' in the context of attorney's fees requests usually refers to situations where more than the necessary number of lawyers are present for a hearing or proceeding or when multiple lawyers do the same task.")).

Upon review, the court does find some of counsels' entries to be duplicative. To begin with, it is unclear why plaintiff required two separate law firms, Waddell Law Firm LLC and Bell Law LLC, both located in Kansas City, Missouri, to handle his case. As stated above, plaintiff does not allege that this case was complex or unusual and, indeed, a review of the Petition reveals that it was not. Nor does counsel allege that this case took time away from their other cases or prevented them from taking additional cases. What *is* clear from an examination of counsels' invoices is that the two law firms were engaged in *overlapping* labor, not in a division of labor.

Plaintiff filed three documents during the short life of his case: the Petition (Dkt. 1-1), the Motion for Fees and corresponding memorandum in support (Dkts. 12 and 13), and a Statement of Consultation (Dkt. 11). Counsel also drafted a *Nelson v. Miller* letter and a written acceptance of defendants' settlement offer. According to counsels' timesheets, Bell took primary responsibility for the pleadings and other documentation prior to settlement, drafting the initial demand letter and Petition, while Waddell was responsible for drafting and filing the current motion for fees. Dkts. 13-4, 13-5.

While there is no question that counsel are entitled to be compensated for their time, they are *not* entitled to payment above and beyond the hours that "a reasonable attorney would have incurred and billed in the marketplace under similar circumstances." *Caputo v. Prof'l Recovery*

*Servs., Inc., et al*, 2004 U.S. Dist. LEXIS 12478, at *10 (D. Kan. Jun. 9, 2004) (quoting *Robinson*, 160 F.3d at 1281).  The court again notes that the *only* motion practice that has taken place in this case is plaintiff's pending motion for attorney's fees.  Furthermore, other than the basic corporate disclosures of defendants, there appears to have been no exchange of discovery.  The court cannot understand what counsel spent nearly 36 hours doing in a case that settled, without mediation, less than two months after the date it was filed.  As such, it shall reduce the submitted hours accordingly.

### i. Daniel Shaw

The submitted timesheets reveal that Shaw drafted a demand letter to defendants as well as the subsequent petition when early negotiations broke down.  For this, Shaw documented 6.18 hours.  Defendants have conceded 3.89 of these hours.  Dkt. 16, at 17.  Based on its review, the court finds that Shaw completed 6.18 hours of compensable work.

### ii. Bryce B. Bell

The balance of the submitted timesheets from Bell Law, LLC, (minus the 1.35 non-compensable hours for purely secretarial/administrative work) details the services of Bell himself, totaling 12.20 hours.  Dkt. 13-8, at 4.  Included in these hours is time spent meeting with Shaw and reviewing his work, meeting with plaintiff, drafting the initial demand letter, revising the initial petition, reviewing the settlement offer, and drafting the affidavit for this pending fee application.  Dkt. 13-5.  Time spent on these tasks totals 5.27 hours, for which Bell is entitled to compensation.

The majority of the remaining balance of Bell's submitted hours, 6.93, involves vague review of the case file as well as numerous entries dealing with discussions with Waddell.  When compared with Waddell's timesheets, it appears that many of these entries are not only

9

unnecessary, but also duplicative. The court therefore reduces the balance of Bell's submitted hours by twenty percent (20%) to 5.54 compensable hours, for a total 10.81 compensable hours.

### iii.     A. Scott Waddell

As noted above, the only filing Waddell created and/or filed in this case is the current Motion for Fees and corresponding memorandum in support. Preparation of these documents took 2.6 hours. Additionally, Waddell spent .90 hours meeting with plaintiff and .80 hours drafting an acceptance of defendants' settlement offer and attempting to resolve the current fee dispute. Together, these hours total 4.3.

Yet, Waddell seeks compensation for 15.80 hours of work. The majority of Waddell's time entries involve "studying and analyzing" various documents, including emails and items such as the Notice of Removal and the Civil Cover Sheet. Dkt. 13-4. It appears that Waddell spent most of his time reviewing what Bell had done. Based on the experience detailed in his Declaration, it seems Bell was perfectly capable of managing this case on his own without the general oversight of Waddell. Furthermore, Bell also had the assistance of Shaw.

In *Weaver v. Performant Recovery, Inc.*, this court warned Mr. Waddell against including duplicative, redundant, non-compensable, and excessive hours in fee petitions such as the one now before this court. 2014 U.S. Dist. LEXIS 137134 (D. Kan. Sept. 29, 2014). In *Weaver*, counsel sought fees and costs in the amount of $20,737.46 for 75.20 hours of claimed work. *Id*. at \*11. The court found that, of this total, 2.90 hours were for clerical work, 12.40 hours were more appropriately attributed to paralegal work, and .30 hours documented non-compensable work. *Id*. at \*13-16. The court reduced the remaining 59.60 hours by twenty percent (20%) after finding them to be unreasonable based on what a reasonable attorney would have incurred and billed under similar circumstances. *Id*. at \*20.

After subtracting the already-determined compensable hours (4.30) and non-compensable hours (.10), the balance of Waddell's hours is 11.40.  Because this court cannot adequately determine what it is that Waddell was doing during this time, and because the balance of the hours appears to be largely duplicative of Bell's and Shaw's work, the court sees fit to eliminate the balance of Waddell's submitted hours.  As such, Waddell's compensable hours total 4.30.

### iv.     Hours Summary

Based on this court's review of the record, the level of difficulty of this case, and the submitted time sheets of Shaw, Bell, and Waddell, it finds the total number of compensable hours to be 21.29.  The court must next determine whether counsels' hourly rate was reasonable.

### 2.     Reasonable Hourly Rate

"When determining the appropriate rate to apply to the reasonable hours, 'the district court should base its hourly rate award on what the evidence shows the market commands for . . . analogous litigation.'"  *United Phosphorus,* 205 F.3d at 1234 (quoting *Case*, 157 F.3d at 1255). The moving party bears the burden to show that the requested rates are reasonable, that is, they "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998).  "The establishment of hourly rates in awarding attorneys' fees is within the discretion of the trial judge who is familiar with the case and the prevailing rates in the area." *Lucero v. City of Trinidad*, 815 F.2d 1384, 1385 (10th Cir. 1987) (internal citations omitted).

Here, counsel seeks an hourly rate of $300 for Waddell and Bell and $150 for Shaw. Counsel relies on their Contract for Legal Services, entered into with plaintiff on June 19, 2014, (Dkt. 13-1), and an article from the Corporate Counsel Desk Book detailing the billing rates for lawyers in federal practice in Missouri. Defendants do not appear to contest these hourly rates.

As such, the court finds that the hourly rates of $300 for Waddell and Bell and $150 for Shaw are reasonable.

Therefore, using the lodestar formula, attorney's fees are calculated as follows:

| | |
|---|---|
| Attorney rate hours (Bell): | 10.81 x $300 = $3,243.00 |
| Attorney rate hours (Waddell): | 4.3 x $300 = $1,290.00 |
| Attorney rate hours (Shaw): | 6.18 x $150 = $927.00 |
| **Total Attorney Fees:** | **$5,460.00** |

**B.     Costs and Fees**

Finally, plaintiff seeks an award of $214.88 in costs and fees. Dkt. 13, at 13. The FDCPA grants a successful plaintiff "the costs of the action." 15 U.S.C. § 1692k(a)(3). The court finds plaintiff's request for costs and fees in the amount of $214.88 to be reasonable.

**IT IS THEREFORE ORDERED** this 5th day of February, 2015, that plaintiff's Motion for an Award of Costs and Attorney's Fees is granted to the extent outlined above, in the amount of **$5,460.00** plus **$214.88** in costs and fees, for a total award of **$5,674.88**.

s/ J. Thomas Marten<br>
J. Thomas Marten, Chief Judge